No. 16-16816

---

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

In re: CARRIER IQ, CONSUMER PRIVACY LITIGATION,

PATRICK KENNY, individually and on behalf of himself and all others similarly situated,
*Plaintiff-Appellee*,

v.

SAM A. MIORELLI,
*Objector-Appellant*,

v.

CARRIER IQ, INC.; HTC AMERICA, INC.; HUAWEI DEVICES USA, INC.; PANTECH WIRELESS, INC.; SAMSUNG TELECOMMUNICATIONS AMERICA, INC.; LG ELECTRONICS MOBILECOMM U.S.A., INC.,
*Defendants − Appellees.*

---

Appeal from the United States District Court for the Northern District of California
Case No. 3:12-md-02330-EMC (Honorable Edward M. Chen)

---

## OPENING BRIEF OF OBJECTOR-APPELLANT SAM A. MIORELLI

Sam A. Miorelli, E.I., Esq.
Law Office of Sam Miorelli, P.A.
764 Ellwood Avenue, Orlando, FL 32804
E-mail: sam.miorelli@gmail.com
Phone: 352-458-4092

# TABLE OF CONTENTS

Table of Contents...................................................................................... ii

Table of Authorities ................................................................................ iv

Introduction ............................................................................................. 1

Statement of Jurisdiction ......................................................................... 2

Statement of Issues Presented for Review .............................................. 2

Pertinent Rules........................................................................................ 4

Statement of the Case ............................................................................. 8

Summary of Argument ........................................................................... 13

Argument................................................................................................ 16

   I.   The District Court Insufficiently Examined Whether the Settlement Agreement was Proper Under Rule 23(a) and (e). ........................................................ 16

      A.   Non-waivable issue for appeal. ....................................................... 16

      B.   The district court did not conduct the analysis required by Rule 23(a). ...... 17

      C.   The district court did not conduct the analysis required under Hanlon of whether the Settlement Agreement is fair, reasonable, and adequate in accordance with Rule 23(e). ...................................................................... 19

      D.   The district court did not provide independent judicial scrutiny................. 21

   II.   The District Court Improperly Considered the Character of Objectors Instead of the Merits of Their Objections. ................................................................. 24

   III.   The District Court Abused its Discretion When it Approved an Attorneys' Fee Award Based on a "Questionable" Lodestar Without Reviewing the Billing Records of Class Counsel or Allowing Objectors Access to Such Records............ 32

IV.     The District Court Abused its Discretion by Approving a Pre-Certification Class Action Settlement Which Recovered Less Than 0.0045% of Potential Damages and Without Evaluating the Class' Best-Case Outcome at Trial. ............. 36

    E.     Beyond the procedural deficiencies, the Settlement Agreement itself is manifestly unfit for final approval. ........................................................................ 40

V.     The District Court Abused its Discretion by Approving a Settlement Which Paid Named Plaintiffs More Than 36x More Than Absent Class Members............ 42

VI.     The District Court Violated This Court's Precedent by Awarding Attorneys' Fees Based on the Gross Settlement Instead of the Net Settlement Without Explaining Why a Gross-Based Calculation was More Reasonable. ......................... 45

Conclusion ................................................................................................................ 47

Statement of Related Cases ................................................................................... 48

Certificate of Service .............................................................................................. 48

# TABLE OF AUTHORITIES

## Cases

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ........................ 21

*Barney v. Holzer Clinic, Ltd.,* 110 F.3d 1207 (6th Cir. 1997) .............................. 17

*Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993) ...................................... 28

*Camfield v. City of Oklahoma City*, 248 F.3d 1214 (10th Cir. 2001)................................. 29

*CFTC v Topworth*, 205 F.3d 1107 (9th Cir. 1999) .......................................... 23

*Cook Inv. Co. v. Harvey*, Case No. C-73-341, 1975 WL 394 (N.D. Ohio April 4, 1975) 26

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012)............................................... 22

*Devlin v. Scardeletti*, 536 U.S. 1 (2002) ................................................................ 2

*Diaz v. Trust Territory of Pacific Islands,* 876 F.2d 1401 (9th Cir. 1989) ...................... 17, 21

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1 (1st Cir. 1999) ........................... 32

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ................................................ 17

*Guam Sasaki Corp. v. Diana's Inc.*, 881 F.2d 713 (9th Cir. 1989)......................................... 3

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..............................................passim

*Hecht v. United Collection Bureau*, 691 F.3d 218 (2d Cir. 2012)........................................... 46

*Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir. 1983) ......................................... 44

*In re Agent Orange*, 818 F.2d 145 (2d Cir. 1987) ..................................................... 46

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F3d 935 (9th Cir. 2011)...............3, 4, 22, 46

*In re Community Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277 (3d Cir. 2005).................................................................... 23

*In re Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010)................................. 36

*In re Online DVD-Rental Antitrust Litig.*, 770 F.3d 934 (9th Cir. 2015) .................... 16, 45

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 278 F.3d 175 (3d Cir.
2002) ................................................................................................ 28

*In re T.H. Richards Processing Co.*, 910 F.2d 639 (9th Cir. 1990) ........................................ 23

*In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90 (E.D. N.Y. Jan. 26, 2012) ..................... 26

*In re: Plasma Derivative Protein Therapies Antitrust Litig.*, Case No. 09 C 7666 / MDL No.
2109, 2010 WL 1433316 (N.D. Il. April 7, 2010) ........................................ 26

*Jones v. Ford Motor Credit Co.*, Case No. 00Civ.8330RJHKNF, 2005 WL 743213 (S.D.
N.Y. Mar. 31, 2005) ......................................................................... 27

*Kincade v. General Tire & Rubber Co.,* 635 F.2d 501 (5th Cir. 1981).................................. 27

*Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683 (N.D. Ga. April 15, 1983) ............. 26

*Mohanty v. BigBand Networks, Inc.*, Case No. C 07-5101 SBA, 2008 WL 426250 (N.D.
Cal. Feb. 14, 2008) .......................................................................... 27

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003)........................................... 17, 21, 22

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006).................................... 15, 39

*Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982)...................................... 44

*Plummer v. Chemical Bank*, 91 F.R.D. 434 (S.D.N.Y. 1981), *aff'd*, 668 F.2d 654 (2d Cir.
1982) .............................................................................................. 44

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414
(1968) ............................................................................................... 20

*Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157 (9th Cir. 2013)............15, 43

*Rattray v. Woodbury County, IA*, 614 F.3d 831 (8th Cir. 2010) ......................... 18

*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014)................................ 46

*Regner v. Northwest Airlines, Inc.*, 652 N.W.2d 557 (Minn. Ct. App. 2002)...................... 29

*Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277 (7th Cir. 2002)............................ 28

*Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999 (9th Cir. 2009) .....................3, 17

*Saks v. Parilla, Hubbard, & Militzok*, 67 Cal.App.4th 565, 79 Cal.Rptr.2d 120 (Cal. Ct. App. 1998) .................................................................................. 29

*Sealy v. Easy Living*, 743 F.2d 1378 (9th Cir. 1984)...................................... 23

*Silber v. Mahon*, 957 F.2d 697 (9th Cir. 1992)..................................14, 17, 21

*Silver v. Executive Car Leasing*, 466 F.3d 727 (9th Cir. 2006) ............................ 23

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003).......................................... 22

*Tatz v. Nanophase Technologies Corp.*, Case No. 01 C 8440, 2003 WL 21372471 (N.D. Il. June 13, 2003)......................................................................... 26

*Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306 (11th Cir. 2002)............................ 29

*Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1228-9 (11th Cir. 1998)........................... 46

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ............................ 17

*Vassalle v. Midland Funding, LLC*, 708 F.3d 747 (6th Cir. 2013) ........................... 43

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 388 (2011) ...................................14, 17

**Statutes**

28 U.S.C. § 1331 .............................................................................. 2

28 U.S.C. § 1367 ................................................................................................ 2

**Other Authorities**

Brett G. Scharffs, *The Character of Legal Reasoning*, 61 Wash. & Lee L. Rev. 733 (2004)

................................................................................................................... 28

Ruggero J. Aldisert, *Logic for Lawyers: a Guide to Clear Legal Thinking* (3d ed. 1998) ...... 28

**Rules**

11th Cir. R. 25-6 .............................................................................................. 29

Fed. R. App. P. 4 .............................................................................................. 2

## INTRODUCTION

Carrier IQ created a software package that supposedly provided diagnostic information to cell phone manufacturers and carriers. In reality it had the capacity to be the ultimate back-door leaking out all manner of sensitive information and was installed on the phones of 30 million Americans. When this was discovered, private and FTC litigation ensued nationwide. After the case survived a motion to compel arbitration and a motion to dismiss still maintaining a clear path to a trial risking a multi-billion-dollar verdict, the parties, which include some of the world's largest cell phone makers, settled for a mere $9 million. What followed was a "not likely to be productive" class notice, an amazingly-small class response, and, predictably, millions of dollars for the attorneys and thousands of dollars for the seventeen class representatives.

The district court amazingly saw this judicial travesty in the making but then relied on the proposed orders submitted by the parties to skip almost the entire judicial inquiry required by Rule 23 and the cases interpreting it. It also delegated all attorneys' fee and litigation expense reviews to the very lawyers seeking payment and awarded exactly what they asked for without any real analysis of why. Finally, it waived off objectors with citation to Plaintiff-Appellee's *argumentum ad hominem* despite such misbehavior being banned in the Northern District of California.

This Court should reverse and remand with instructions to reject this unfair deal, in doing so, it will be the first court ever to stand up for the rights of people like

Mr. Miorelli, whose Samsung Galaxy smartphone is one of the millions of affected devices.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff-Appellee brought claims arising under federal law and had supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). This Court has jurisdiction pursuant to 28 U.S.C. § 1921. The district court's judgment is an appealable final decision which disposes of all matters related to the case and Objector-Appellant Sam A. Miorelli, E.I., Esq. ("Mr. Miorelli"), appearing *pro se* before the district court, timely objected. ER198.[1] The district court issued its ruling and ordered entry of judgment on August 25, 2016. Mr. Miorelli timely filed a Notice of Appeal on September 23, 2016. Fed. R. App. P. 4(a)(1)(A). Mr. Miorelli has standing to appeal a final approval of a class action settlement without the need to formally intervene in the case. *Devlin v. Scardeletti*, 536 U.S. 1 (2002).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Did the district court insufficiently examine whether the Settlement Agreement was proper under Rule 23(a) and (e)?

**Standard of Review:** The district court's determination of whether the Settlement Agreement was fair, reasonable, and adequate is reviewed by this Court for

---

[1] "ER" refers to Mr. Miorelli's Excerpts of Record. "Dkt" refers to the docket in the referenced case.

abuse of discretion. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F3d 935, 940 (9th Cir. 2011). Whether the district court followed the proper procedure when granting final approval to the Settlement Agreement is a question of law reviewed *de novo. Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1004 (9th Cir. 2009). (Raised at ER211-215, ER219-222).

2.      Did the district court violate Federal Rule of Civil Procedure 23 by considering personal characteristics of objectors instead of the merits of their objections?

**Standard of Review:** This Court reviews failures of the district court to apply its own rules for abuse of discretion. *Guam Sasaki Corp. v. Diana's Inc.*, 881 F.2d 713, 715-16 (9th Cir. 1989). This Court reviews failures of the district court to properly interpret the Federal Rules of Civil Procedure *de novo. Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1004 (9th Cir. 2009). (Raised at ER171-172).

3.      Did the district court abuse its discretion by approving an attorneys' fee award which included a lodestar it called "questionable" without either reviewing those records or allowing objectors access to them?

**Standard of Review:** Attorneys' fee awards as part of a class action settlement are reviewed by this Court for abuse of discretion. *Bluetooth*, 654 F3d at 940. (Raised at ER222-224).

4.      Did the district court abuse its discretion by approving a pre-certification class action settlement which recovered less than 0.0045% of potential damages and without evaluating what the class' best-case outcome at trial might have been?

**Standard of Review:** The district court's determination of whether the Settlement Agreement was fair, reasonable, and adequate is reviewed by this Court for abuse of discretion. *Bluetooth*, 654 F3d at 940. (Raised at ER212-213).

5.      Did the district court abuse its discretion by approving a settlement which paid named plaintiffs more than 36X the absent class member's recovery?

**Standard of Review:** The district court's determination of whether the Settlement Agreement was fair, reasonable, and adequate is reviewed by this Court for abuse of discretion. *Bluetooth*, 654 F3d at 940. (Raised at ER219-222).

6.      Did the district court violate this Court's precedent by approving an attorney's fee based on the gross settlement amount instead of the net settlement value by not evaluating why a gross-based calculation was reasonable?

**Standard of Review:** Attorneys' fee awards as part of a class action settlement are reviewed by this Court for abuse of discretion. *Bluetooth*, 654 F3d at 940. (Raised at ER225-226).

## PERTINENT RULES

**Federal Rule of Civil Procedure 23. Class Actions.**

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;

4

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

[…]

e) Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

**Northern District of California Procedural Guidance for Class Action Settlements**

The following guidance is offered for parties submitting class action settlements for preliminary and final approval in the Northern District of California. Failure to address all of the issues discussed below may result in unnecessary delay, or even failure, of approval. Parties should consider this guidance during settlement negotiations and when drafting settlement agreements. Parties should also consider the suggested language below when drafting class notices.

Preliminary Approval

1)   INFORMATION ABOUT THE SETTLEMENT—The motion for preliminary approval should address the following information:

    a.   If a litigation class has not been certified, any differences between the settlement class and the class proposed in the complaint.

    b.   If a litigation class has been certified, any differences between the settlement class and the class certified.

    c.   Any differences between the claims to be released and the claims set out in the operative complaint.

    d.   The likely recovery per plaintiff under the terms of the settlement and the potential recovery if plaintiffs were to prevail on each of their claims.

    e.   The fairness of the allocation of the settlement fund among class members.

[…]

*Available at* http://cand.uscourts.gov/ClassActionSettlementGuidance (last visited Feb. 16, 2017).

**Northern District of California Guidelines for Professional Conduct**

These Guidelines for Professional Conduct are adopted to apply to all lawyers who practice in the United States District Court for the Northern District of California. Lawyers owe a duty of professionalism to their clients, opposing parties and their

counsel, the courts, and the public as a whole. Those duties include, among others: civility, professional integrity, personal dignity, candor, diligence, respect, courtesy, cooperation and competence.

These Guidelines are structured to provide a general guiding principle in each area addressed followed by specific examples which are not intended to be all-encompassing.

Every attorney who enters an appearance in this matter shall be deemed to have pledged to adhere to the Guidelines. Counsel are encouraged to comply with both the spirit and letter of these Guidelines. Nothing in these Guidelines, however, shall be interpreted to contradict or supersede any Order of the Court or agreement between the parties. The Court does not anticipate that these Guidelines will be relied upon as the basis for a motion; rather, it is the Court's expectation that they will be followed as Guidelines.

These Guidelines should be read in the context of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California (including, specifically, Civil Local Rule 11-4), the standards of professional conduct required of members of the State Bar of California, and all attorneys' underlying duty to zealously represent their clients. Nothing in these Guidelines should be read to denigrate counsel's duty of zealous representation. However, counsel are encouraged to zealously represent their clients within highest bounds of professionalism. The legal profession must strive for the highest standards of attorney behavior to elevate and enhance the service to justice.

[…]

7. <u>Writings Submitted to the Court</u>

Written materials submitted to the court should always be factual and concise, accurately state current law, and fairly represent the parties' positions without unfairly attacking the opposing party or opposing counsel.

For example:

a.  Facts that are not properly introduced as part of the record in the case should not be used in written briefs or memoranda of points and authorities.
b.  A lawyer should avoid denigrating the intelligence, ethics, morals, integrity, or personal behavior of the opposing party, counsel, or witness, unless such matters are at issue in the proceeding.

[…]

*Available at* http://cand.uscourts.gov/professional_conduct_guidelines (last visited Feb. 16, 2017).

## STATEMENT OF THE CASE

Patrick Kenny, Justin Sharp, Jeremy Feitelson, and Greg Feitelson filed suit against Carrier IQ, Inc., a Delaware corporation, HTC Corporation, a Taiwanese company, HTC America, Inc., a Washington corporation, and Samsung Electronics Co., Ltd., a Korean company in the Northern District of California on December 1, 2011. (Case No. 3:11-cv-05774-EMC, Dkt 1). The suit alleged that Carrier IQ software was used to track and record private user information on mobile communication devices, including users' location, keystrokes, message content, and data. *Id.* That suit was consolidated with seventeen others in MDL No. 2330 and transferred to the Northern District of California, becoming the instant case. ER155.

Appointment of Plaintiff-Appellee's lead counsel was contested and the district court appointed Hagens Berman Sobol Shapiro, LLP and Pearson Simon Warshaw & Penny, LLP (collectively, "Class Counsel") as the interim lead counsel for Plaintiff-Appellee. ER152. The district court held that "both slates are well qualified" but picked Class Counsel, in part, based on their representations that they would adopt measures to limit costs, expenses, and attorneys' fees. ER152. Those measures included, *inter alia*, restrictions on the number of personnel at depositions and court hearings, limits on travel expenses, use of an outside vendor for document review,

detailed tenth-of-an-hour attorney billings. ER536. The district court adopted these measures, holding that costs or expenses outside those guidelines would be "presumptively unreasonable" and warned that even costs or expenses or attorneys' fees falling within the guidelines would not be presumptively reasonable. ER151.

No itemized list of individual costs, attorney time logs, travel expenses, outside vendor invoices, or the like was ever filed in the docket of the case.

On June 23, 2014, Plaintiff-Appellee filed the Second Consolidated Amended Complaint against Carrier IQ, Inc., HTC America, Inc., HTC Corporation, Huawei Device USA, Inc., LG Electronics MobileComm U.S.A., Inc., LG Eletronics, Inc., Motorola Mobility LLC, Pantech Wireless, Inc., Samsung Telecommunications America, Inc., and Samsung Electronics Co., Ltd. alleging violations of the Federal Wiretap Act, state privacy acts, state consumer protection acts, the Magnuson-Moss Warranty Act, and the implied warranty of merchantability. ER401. Prior to the district court ruling on Defendant-Appellees' motion to dismiss, a settlement in principle was reached between Carrier IQ and Plaintiff-Appellee and noticed to the district court on November 3, 2014. ER398. The district court ruled on the motion to dismiss with regard to the non-settling device manufacturers only on January 21, 2015, dismissing many of the claims, but with all-but-one of them granting Plaintiff-Appellee leave to amend to add representative class members or amend to cure the deficiencies. ER148-49.

Instead of filing a new complaint, the parties settled in an agreement noticed to the district court on June 25, 2015. ER391. Before holding a hearing on the motion for preliminary approval, the district court ordered supplemental briefing regarding, *inter alia*, Class Counsel's estimate of the value of the case were the litigation to proceed to trial. ER49. Plaintiff-Appellee first attempted to respond by filing the critical declarations related to Class Counsel's estimate of the value of the case under seal but the district court allowed the only evidence of Carrier IQ, Inc.'s poor financial condition to remain under seal. ER47. The district court issued its order granting preliminary approval (the "Preliminary Approval Order" or "PAO") on March 1, 2016. ER25. The PAO did not cite *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) or its progeny. The PAO declares that the Settlement Agreement is "fair, reasonable, adequate, and in the best interests of the Settlement Class" but neither evaluates nor explains any of the *Hanlon* factors.[2] ER27. The PAO recites the requirements of Federal Rules of Civil Procedure 23(b)(2) and (b)(3) without any analysis of why the district court found that the requirements were met. *Id.*

The Settlement Agreement provides for a $9 million gross settlement fund from which $85,000 in service awards, up to $2.25 million in attorneys' fees, litigation expenses, Settlement Administrator fees, and taxes would be deducted. ER312-13. The Settlement Agreement includes a clear sailing provision whereby Defendants-

---

[2] The words "strength" and "risk" do not even appear in the PAO.

10

Appellees agreed not to oppose Plaintiff-Appellee's motion for attorneys' fees and costs provided Class Counsel's request did not exceed 25% ($2.25 million) of the gross settlement fund. ER325. Class Counsel moved for $2.25 million in attorneys' fees, $108,933.72 in "costs and expenses" and $85,000 in incentive payments and the final Settlement Administrator bill was estimated at $655,000. ER15.

The Settlement Administrator began implementing the notice plan on April 6, 2016 and ended notice on the claims/objection/exclusion deadline of June 5, 2016. ER193. Three class members (including Mr. Miorelli) objected, five class members opted-out, and 39,458 timely valid claims were submitted. ER17. Plaintiff-Appellee and Defendants-Appellees agreed at the final fairness hearing to allow 3,119 valid untimely claims to also join the recovery. ER170. Later, the district court permitted Objector-Class Member Sandra Singer's claim to be treated as valid, bringing the total number of eligible claims to 42,578 and the estimated payment per claim to $138.34/each. ER160. There were approximately 30 million people in the class, so the claims rate was a dismal 0.14%. ER15.

Mr. Miorelli argued, *inter alia*, that (a) the recovery for the class was inadequate and demonstrated that the case was a nuisance settlement which should have been dismissed or otherwise had self-dealing class representatives, (b) the incentive payments were excessive and raised representational adequacy issues, (c) Class Counsel's fee request was excessive and raised self-dealing concerns, and (d) the moving parties had not presented adequate evidence to support awards of the

11

requested attorneys' fee and expenses. ER204-31. Plaintiff-Appellants' response to Mr. Miorelli's and objector Patrick Sweeney's objections began with an *ad hominem* attack calling them "notorious 'professional' objectors[.]" ER182-83. Plaintiff-Appellants prefaced their response to a third objector with similar *argumentum ad hominem*. ER182. In total, Plaintiff-Appellants spent approximately 28% (5 of 18) of their pages responding to objections engaged in *argumentum ad hominem*. ER182-87.

Mr. Miorelli was the only objector to address the district court at the final fairness hearing on July 28, 2016. ER179. That discussion began, just as in Plaintiff-Appellee's briefing, with discussion of *argumentum ad hominem*. ER171-72. The district court issued its orders and the judgment appealed herein on August 25, 2016. ER1, ER2, ER6, ER13. The district court did not evaluate any of the *Hanlon* factors except for "the reaction of the class members to the proposed settlement," instead dispensing with further analysis by stating "the Court previously found that the first seven factors weighed in favor of preliminary approval, and nothing has been submitted to the Court to adequately support a contrary conclusion." ER18-19. The district court justified the small number of claims, in part, by stating that "ad campaigns are not likely to be productive." ER19.

With regard to Mr. Miorelli's objection, the district court began its analysis by citing part of Class Counsel's *ad hominem* attack. ER20. The Court followed the same pattern by beginning with citation to Class Counsel's *ad hominem* attack against Mr. Sweeney as well. ER19-20. The district court did not address Mr. Miorelli's argument

that the recovery was inadequate. The district court questioned Class Counsel's lodestar but did not indicate that it had reviewed any of the billing records, instead indicating that it had delegated that responsibility to Class Counsel. ER22. Instead the district court declared that since even if the lodestar were reduced by 67%, it would be approximately the $2.25 million requested, the fee request was thus reasonable. ER22-23. The district court agreed with Mr. Miorelli and partially reduced five of the seventeen incentive awards for a total reduction of $10,000 out of $85,000 requested. ER23. In all other respects, the district court approved the Settlement Agreement and the requested attorneys' fees, costs, settlement administration fees, and incentive awards as requested by Plaintiff-Appellee, including use of their proposed orders. ER6-12, ER2-5. In total this resulted in a net settlement fund of approximately $5,911,066.28. ER15. Mr. Miorelli timely appealed on September 23, 2016. ER163-64.

## SUMMARY OF ARGUMENT

When the district court issued its final orders, it approved as "fair, adequate, and reasonable" a settlement that only attracted a 0.14% response rate from the absent class members and only recovered 0.0045% of the class' potential recovery at trial. Worse yet, that 0.0045% statistic had to be calculated by Mr. Miorelli since neither the settling parties nor the district court ever evaluated what it thought the potential value of the case was at trial. Recognizing the dismal response rate with a shrug, the district court admitted that the notice plan it approved was "not likely to be productive." ER19.

While the district court took time to comment on the dismal performance of the notice plan and its opinion of the personal motivation of objectors, it did not evaluate whether the requirements of Rule 23(a) or (e) were satisfied by the Settlement Agreement. This violates both *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 388 (2011) and *Hanlon*, and is, alone, a sufficient basis to reverse. This lack of analysis also violates the district court's fiduciary obligation to the absent class members. *Silber v. Mahon*, 957 F.2d 697, 701 (9th Cir. 1992).

The district court's behavior in this case, following Plaintiff-Appellee's lead in discussing first *who* objectors are and then not even addressing many of the arguments shows how dangerous it is to allow *argumentum ad hominem* into cases such as this. Nothing in Rule 23(e) or the cases evaluating it has anything to do with whether an objector is a so-called "professional." This Court should order that these obviously-irrelevant and unprofessional tangents cannot form the basis for judicial opinion-making in class actions any more than any other area of the law. It should reverse and order an end to this growing pattern.

The district court also impermissibly delegated review of Class Counsel's billings to one of the attorneys on the case. It did not review any of the documents it had ordered would be necessary when it appointed Class Counsel and when faced with a lodestar it thought was "questionable" it simply assumed a fraction, matched it to the fee request, and declared, *ipsie dixit*, reasonableness. Mr. Miorelli's insistence that

the attorneys follow their own guidelines that had gotten them the job in the first place was summarily ignored.

The district court almost got the evaluation of the maximum value of the case at trial right. But when Plaintiff-Appellees provided a mostly-nonresponsive follow-up to the district court's inquiry, the district court did not pursue the matter any further. To-date the only estimate of the value of this case that comes to an actual *number* is the estimate Mr. Miorelli made in his objection. While reasonable people can disagree about the value of a particular case, this settlement is so small as to prove the parties both saw this as a nuisance case. In that regard this case bears striking similarity both in actual and relative terms to *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006). Judge Easterbrook's explanation of settlement behavioral economics is a cogent and reasonable take that this Court should adopt, at least, in the context of this miserably-small settlement.

This case also suffered from absent class representatives as well as class members. The district court recognized this partially when it reduced a few of the incentive awards, but did not recognize how the large-disparity Settlement Agreement itself, with a term that meant none of the juicy incentive payments would be made unless the overall deal was approved, might indicate self-dealing. This case presents an opportunity for the Court to confirm the ongoing viability of *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157 (9th Cir. 2013) and knock down an effectively-contingent incentive payment scheme.

Finally, the district court treated *In re Online DVD-Rental Antitrust Litig.*, 770 F.3d 934 (9th Cir. 2015) as a license to award gross-based common fund awards instead of net-based common fund awards without any consideration whatsoever of whether one was more reasonable than the other considering, *inter alia*, the "questionable" lodestar and "not likely to be productive," yet still "high," settlement administration and notice expenses. Mr. Miorelli believes that the district court must at least *consider* which method is most appropriate in a case and explain why it picks whichever methodology it ultimately decides. That lack of any consideration whatsoever is grounds for reversal.

For these reasons, Mr. Miorelli asks the Court to vacate, reverse, and remand with instructions to reject the Settlement Agreement. In the alternative Mr. Miorelli asks if remand is made without instructions to reject that the district court be instructed to allow Mr. Miorelli leave to conduct discovery of the class representatives to determine whether they have been adequately representing the class and whether they are able to continue to do so going forward.

## ARGUMENT

I. **The District Court Insufficiently Examined Whether the Settlement Agreement was Proper Under Rule 23(a) and (e).**

A. Non-waivable issue for appeal.

Even if Mr. Miorelli had not raised this argument below, since this is a pre-certification settlement agreement, the district court owes the absent class members a

16

fiduciary duty and must conduct the required analysis even if nobody objects. *Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989); *Silber*, 957 F.2d at 701; *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). As such, even if an objector did not raise this issue in an objection, the district court's failure to follow Rules 23(a) and (e) would constitute a breach of that fiduciary duty and would be a ripe issue for any class member to raise on appeal.[3] *See Riordan*, 589 F.3d at 1004.

B.  The district court did not conduct the analysis required by Rule 23(a).

The Supreme Court requires that a district court may not certify a class, even for settlement purposes only, until it "is satisfied, after a rigorous analysis," that the certification requirements of Rule 23(a) are met. *Dukes*, 564 U.S. at 351 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). The district court is required to do more than a "brief and conclusory" recitation of the requirements of Rule 23(a) to demonstrate that the representative plaintiffs meet the adequacy of representation requirement. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996), *see also Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1214 (6th Cir. 1997) ("The district court's duty to assay whether the named plaintiffs are adequately representing the broader

---

[3] While not an issue in the present appeal since Mr. Miorelli raised the issue below, Mr. Miorelli believes that a case such as this, where the district court plainly breached its fiduciary duty to the absent class members, would be ripe for even a non-objecting class member to raise to this Court on a petition for mandamus. There is, after all, a gap between being a class member with standing to underline appeal under *Devlin* and merely an aggrieved class member who did not object but may have nonetheless been injured by a district court that, like here, approves a pre-certification Settlement Agreement without even the minimum analytical effort required.

class does not end with the initial certification…"); *Rattray v. Woodbury County, IA*, 614 F.3d 831, 835 (8th Cir. 2010) ("The inquiry into adequacy of representation, in particular, requires the district court's close scrutiny, because the purpose of Rule 23(a)(4) is to ensure due process for absent class members, who generally are bound by a judgment rendered in a class action.").

The district court did not conduct any Rule 23(a) analysis in its rulings in this case. In the PAO, the district court's analysis of representational adequacy consists of a single clause: "(d) the Named Plaintiffs and proposed Class Representatives and their counsel will fairly and adequately represent and protect the interests of the Class Members[.]" ER27. These same 23 words are repeated, verbatim, in the final approval order. ER8. The district court made no further analysis of whether the Class Representatives were adequate representatives. Notably, the district court *did not even address* the portions of Mr. Miorelli's Objection related to this issue.

This is not a formalistic complaint. Mr. Miorelli raised serious concerns about the representational adequacy of the class representatives that he addresses *infra* at V. The Court ignored the representational adequacy portion of Mr. Miorelli's argument and simply decided to reduce a few of the incentive awards on a rough inter-class-representative-fairness justification. ER23. The point of raising a complaint about a large incentive award is not just to return $10,000 to the common fund, but to persuade a district court to consider whether the class representatives signed off on the Settlement Agreement *overall* because of their self-interest. But here the district

18

court did not even start the representational adequacy inquiry, so its brushing-over of Mr. Miorelli's objections therein is neither surprising nor forgivable by this Court.

This Court must reverse the district court and remand for discovery of the class representatives to determine the extent to which they policed the negotiation of the Settlement Agreement and Class Counsel's fee request on behalf of the absent class members.

C. The district court did not conduct the analysis required under *Hanlon* of whether the Settlement Agreement is fair, reasonable, and adequate in accordance with Rule 23(e).

The district court did not identify the relevant analytical framework set forth in *Hanlon* for determining whether a class action settlement is fair, reasonable, and adequate in the PAO. *Hanlon* sets forth a non-exclusive list of factors district courts must evaluate when determining whether a proposed settlement is fair, reasonable, and adequate in accordance with the requirements of Federal Rule of Civil Procedure 23(e). *Hanlon*, 150 F.3d at 1026. Those eight factors are:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* "To survive appellate review, the district court must show it has explored comprehensively all factors." *Id. See also Protective Comm. for Indep. Stockholders of TMT*

*Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 434 (1968). The entirety of the district court's writing concerning whether the Settlement Agreement was "fair, reasonable, adequate, and in the best interests of the Settlement Class" was:

> The Court also finds that the Stipulation: (a) is the result of serious, informed, non-collusive arms' length negotiations, involving experienced counsel familiar with the legal and factual issues of this case and made with the assistance and supervision of the Hon. James Larson (U.S.M.J. Ret.); (b) is within the range of reasonableness such that notice to the Settlement Class of the Settlement Agreement and the Final Approval Hearing is warranted; (c) meets all applicable requirements of law, including Federal Rule of Civil Procedure 23, and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715; and (d) is not a finding or admission of liability by Defendants.

ER27-28. None of these findings bear on any of the eight *Hanlon* factors and certainly cannot be reasonably characterized as a comprehensive exploration of any of them.

In granting final approval, the district court claimed that it had already addressed the first seven *Hanlon* factors in the PAO, so only would address the eighth relating to the reaction of the class. ER18-19. This is clearly erroneous as the factors were not even mentioned in the PAO, let alone given a comprehensive exploration that would satisfy *Hanlon*. The district court then made a three-sentence drive-by mention which only vaguely relates to three of the eight *Hanlon* factors:

> For example, Plaintiffs faced a significant risk given the Court"s rulings in its order on the device manufacturers" motion to dismiss. That risk was compounded by the financial condition of CIQ. Also, this is not a case that has settled early in the proceedings; rather, this case has been contentiously litigated, with Plaintiffs rigorously defending

> against a significant motion to compel arbitration and then
> a significant motion to dismiss.

*Id.* at 7:1-5. This does not demonstrate a "comprehensive" exploration of *all* of the *Hanlon* factors, or even any one of them. Consequently, the district court has not shown that "it has explored comprehensively all factors." *Hanlon*, 150 F.3d at 1026. Having not made that showing, the Court must reverse the judgment and at least remand the case for reconsideration.

### D. The district court did not provide independent judicial scrutiny.

There is very little evidence that the district court independently scrutinized the Settlement Agreement to determine whether it satisfied Rule 23(a) and (e). While the district court's order was not entirely boilerplate, the passages related to Rule 23(a) considerations were absolutely boilerplate copy and paste from Plaintiff-Appellee's proposed orders. *Compare* ER27 *with* ER7-8. That by itself is also reversible error.

"Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber*, 957 F.2d at 701. *Accord Diaz*, 876 F.2d at 1408 ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members").

Where the court is '[c]onfronted with a request for settlement-only class certification,' the court must look to the factors 'designed to protect absentees.'" *Molski*, 318 F.3d at 953 (*quoting Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). "[S]ettlements that take place prior to formal class certification require a

higher standard of fairness." *Molski*, 318 F.3d at 953. "[P]re-certification settlement agreements require that we carefully review the entire settlement, paying special attention to 'terms of the agreement contain[ing] convincing indications that the incentives favoring pursuit of self-interest rather than the class's interest in fact influenced the outcome of the negotiations.'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012) (*quoting Staton v. Boeing*, 327 F.3d 938, 960 (9th Cir. 2003)). "These concerns warrant special attention where the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement." *Hanlon*, 150 F.3d at 1021; *Bluetooth*, 654 F.3d at 946.

This Settlement Agreement contains a clear sailing provision for both attorneys' fees and class representative incentive awards. ER325. This Circuit has specifically identified clear sailing provisions as one of the three most concerning signs of a collusive or fee-driven pre-certification settlement agreement. *Bluetooth*, 654 F.3d at 947. Even without an objection, the district court, pursuant to *Hanlon* and *Bluetooth* had an independent fiduciary duty to the absent class members to pay "special attention." There is no evidence in the record that the district court paid *any* attention.

Adoption of one party's proposed findings constitutes reversible error where those findings are not the result of independent judgment. "[A] district court's verbatim adoption of a party's proposed findings of fact and conclusions of law, although highly disapproved of, is not per se grounds for reversal." *In re Community*

22

*Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 300 (3d Cir. 2005). "However, there must be evidence in the record demonstrating that the district court exercised 'independent judgment' in adopting a party's proposed findings." *Id.* This case is worse than *In re Community Bank* since there the Third Circuit was simply not convinced by the district court's claim to have conducted an independent review. *In re Community Bank*, 418 F.3d at 301. Here, the district court did not even claim it conducted *any* review of the Rule 23(a) requirements.

This Circuit has also expressed concern with the practice of adopting "the findings drafted by the prevailing party wholesale," and held that such an order requires the appellate court to engage in "special scrutiny" involving a "careful inspection of the record." *Silver v. Executive Car Leasing*, 466 F.3d 727, 733 (9th Cir. 2006) (*quoting Sealy v. Easy Living*, 743 F.2d 1378, 1385 (9th Cir. 1984)). *Accord CFTC v Topworth*, 205 F.3d 1107, 1112 (9th Cir. 1999) ("close scrutiny"); *In re T.H. Richards Processing Co.*, 910 F.2d 639, 643 n. 2 (9th Cir. 1990).

This case sits at the intersection of two lines of cases, both pointing toward reversal. One, consisting of *Amchem, Silber, Molski, Dennis, Hanlon,* and *Bluetooth*, required the district court to give the Settlement Agreement "special attention" due to its fiduciary duty to absent class members and the Settlement Agreement's inclusion of a clear sailing provision. The other, consisting of *In re Community Bank*, *Silver, Sealy, CFTC,* and *In re T.H. Richards Processing*, call for the district court to demonstrate it has exercised "independent judgment" or given "special scrutiny" before adopting a

prevailing party's proposed order. Yet this district court did not give seven of the eight *Hanlon* factors *any* scrutiny. Certainly that requires reversal.

## II. The District Court Improperly Considered the Character of Objectors Instead of the Merits of Their Objections.

While it is regrettable and troubling that so frequently class action settlement objectors are met with blatant *argumentum ad hominem* in response to their complaints about a proposed settlement agreement, when a district court endorses such behavior, it crosses an ethical line and one which renders their decision immediately ripe for reversal. In the context of class action settlements this is particularly problematic since objectors have only a single written and a single oral opportunity to address the district court, while the settling parties have often had years of interaction before that particular judge. This case shows what happens when a district court buys into the defective logic of the *argumentum ad hominem*.

Plaintiff-Appellants spent approximately 28% (5 of 18) of their pages responding to objections engaged in *argumentum ad hominem*. ER182-87. Then at the final approval hearing, Mr. Miorelli, addressing the court extremely briefly, was forced to respond and address the issue as he did not have the ability, as of right, to respond in writing. ER171-72. Finally, when the district court issued its final approval orders, it began its analysis by citing part of Class Counsel's *ad hominem* attack. ER20. At the same time, the district court completely ignored several of Mr. Miorelli and other objectors' arguments. This Court should put a stop to this reprehensible practice

24

among the plaintiffs bar and remind district courts that class member objections are to be treated the same no matter what experience the particular class member has with prior objections and certainly that their character has nothing to do with the underlying merits of the Rule 23(e) inquiry before them at final approval.

*Ad hominem* attacks are *per se* improper before the Northern District of California according to their Guidelines for Professional Conduct. Guideline 7(b) is directly on point: "A lawyer should avoid denigrating the intelligence, ethics, morals, integrity, or personal behavior of the opposing party, counsel, or witness, unless such matters are at issue in the proceeding."

The question of whether it is improper for a district court to consider the character of a class action objector when deciding whether to approve a pre-certification settlement agreement appears to be a question of first impression for this Court or any of the Courts of Appeals. Nevertheless, there is a small body of district court case law where district courts across the country have been asked to consider the propriety of *argumentum ad hominem* in the context of Rule 23 class action litigation. In each of these cases Appellant has found, it has been either in the context of the parties mutually lobbing *ad hominem* attacks at each other or defendants using *argumentum ad hominem* to attack the proposed class representative pursuant to Rule 23(a). In every case, the courts have found such argument to be inappropriate, misplaced, and/or counterproductive. *In re: Plasma Derivative Protein Therapies Antitrust Litig.*, Case No. 09 C 7666 / MDL No. 2109, 2010 WL 1433316 at *5 (N.D. Il. April

25

7, 2010); *Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683, 696-97 (N.D. Ga. April 15, 1983) (defendants presented affidavits, including one from a former federal judge, tending to show the putative named plaintiff had lied under oath and made false statements in loan applications yet the court still found these *ad hominem* materials were irrelevant to the Rule 23(a) inquiry and "insufficient to overcome the presumption that litigants in general, including [the putative named plaintiff], will conduct themselves honorably before the Court."); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 105 (E.D. N.Y. Jan. 26, 2012) ("Because integrity considerations are restricted to their relevance to issues in the litigation, courts in this Circuit have disregarded ad hominem attacks that call the putative representative's character into question over incidents related to the case before the court." (internal citations and quotations omitted); *Cook Inv. Co. v. Harvey*, Case No. C-73-341, 1975 WL 394 at *2 (N.D. Ohio April 4, 1975) (rejecting a defendant's *ad hominem* argument a proposed class representative since those attacks did not show *how* the accusations, "even if true somehow disable the plaintiff … from representing the class."); *Tatz v. Nanophase Technologies Corp.*, Case No. 01 C 8440, 2003 WL 21372471 at *8 (N.D. Il. June 13, 2003) (rejecting *ad hominem* claims by defendants that plaintiff Tatz had no understanding of the case, was "a sop for his class action attorneys," and that he lacked personal credibility to pursue the case). In a twist on this pattern, one case saw *argumentum ad hominem* used between competing potential teams of court-appointed class representatives, yet even there the court called the argument "sophomoric."

26

*Mohanty v. BigBand Networks, Inc.*, Case No. C 07-5101 SBA, 2008 WL 426250 at *9 (N.D. Cal. Feb. 14, 2008). Finally, one court found that even a proposed named plaintiff's past criminal convictions for rape and burglary were improper *ad hominem* attacks unrelated to his ability to properly serve as the named class representative since his convictions had nothing to do with the underlying allegations. *Jones v. Ford Motor Credit Co.*, Case No. 00Civ.8330RJHKNF, 2005 WL 743213 at *18 (S.D. N.Y. Mar. 31, 2005).

While none of these district courts had the benefit of an on-point court of appeals opinion, they each reached the same conclusion: the personal characteristics (unrelated to the underlying claim) of a litigant in a class action lawsuit are irrelevant. A rapist can represent a class of people injured by an car company's lending subsidiary just as well as anyone else and just because someone was once accused of wrongdoing does not change whether they meet Rule 23(a) requirements to represent fellow persons injured by a bank. The same applies to objectors and this Court should stop the persistent cluttering of the district court records with *ad hominem* responses to objections.

Objectors have an important role in the process and their opportunity to participate is a key due process protection which underlies the entire class action mechanism. *Kincade v. General Tire & Rubber Co.,* 635 F.2d 501, 507 (5th Cir. 1981). The Seventh Circuit has even held, "[i]t is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over

27

attorneys' fees and the terms of settlement generally." *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 288 (7th Cir. 2002). *See also Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1310 (3d Cir. 1993) ("In seeking court approval of their settlement proposal, plaintiffs' attorneys' and defendants' interests coalesce and mutual interest may result in mutual indulgence. […] In such circumstances, objectors play an important role by giving courts access to information on the settlement's merits.") "When objecting counsel raises pertinent questions concerning the conduct of Lead Counsel, the terms of the proposed settlement, and the costs and fees to be paid from the settlement fund, he or she not only renders a service to the class, but also aids the court." *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 278 F.3d 175, 202 (3d Cir. 2002).

The academy also universally condemns *argumentum ad hominem*. "Instead of addressing the issue presented by an opponent, [the ad hominem] argument makes the opponent the issue. It shifts attention from the argument to the arguer; instead of disproving the substance of what is asserted, the argument attacks the person who made the assertion." Ruggero J. Aldisert, *Logic for Lawyers: a Guide to Clear Legal Thinking*, 16 (3d ed. 1998). Professor Brett Scharffs at J. Reuben Clark Law School, Brigham Young University says "the blatant *ad hominem*, [is] simply out of bounds." Brett G. Scharffs, *The Character of Legal Reasoning*, 61 Wash. & Lee L. Rev. 733, 739 (2004).

Both Federal and state courts of appeals nationwide have also expressed their displeasure with the use of *argumentum ad hominem*. The Eleventh Circuit, for example

prohibits "*ad hominem* or defamatory language" and warns that a document filed
including such may be partially or completely stricken and that the party filing a
document with such language may be ordered to justify themselves by the court. 11th
Cir. R. 25-6(a)(1), 25-6(b) (Dec. 2015). The Eleventh Circuit has also held that "an
attorney who submits documents to the district court that contain *ad hominem* attacks
directed at opposing counsel is subject to sanction under the court's inherent power
to oversee attorneys practicing before it." *Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d
1306, 1308 (11th Cir. 2002). The California Fourth District Court of Appeal has called
*argumentum ad hominem* "indecorous and unprofessional" and "completely unrelated to
the legal issue presented." *Saks v. Parilla, Hubbard, & Militzok*, 67 Cal.App.4th 565,
567, 79 Cal.Rptr.2d 120, 121 (Cal. Ct. App. 1998). *See also Regner v. Northwest Airlines,
Inc.*, 652 N.W.2d 557, 564 (Minn. Ct. App. 2002) ("the circumstances surrounding
appellant's complaints are not relevant to the issues in this case and respondent's use
of appellant's union membership, and union conduct in general, to impugn appellant's
legal argument is simply wrong."); *Camfield v. City of Oklahoma City*, 248 F.3d 1214,
1224 fn.2 (10th Cir. 2001).

　　Calling objectors names for being experienced is bizarre and backward. After
all, Class Counsel and plaintiffs' attorneys in general justify their enormous hourly
rates based on their "extensive experience and expertise in […] complex class-action
litigation." ER240. The same should apply for objectors bringing problems with
settlement agreements to the attention of district courts. Yet regardless of the

character of an objector, none of the legal standards of Rule 23 or this Court's precedents interpreting it allow for a consideration of the character of objectors. While a district court is, for example, given permission under *Hanlon* to add additional factors in considering whether a settlement agreement is fair, reasonable, and adequate, that permission is not a blank check, any additional factors would at least have to have some rational relationship to the underlying inquiry, which the character of a single objector in a class of 30 million could never have.

The district court explicitly addressed considerations of the character of Mr. Miorelli prior to considering only a portion of the objection's substance. ER20. The Court did not, however, give any explanation as to why a consideration of whether Mr. Miorelli was a so-called "professional objector" had anything to do with the merits either of his objection or the inquiries required by Rule 23, *Hanlon*, *Dukes*, or any other analytical framework. While this novel interpretation would ordinarily be reviewed by this Court *de novo*, its complete lack of explanation or justification mean the Court must reverse even under abuse of discretion review.

Additionally, such *argumentum ad hominem* is specifically prohibited by the Northern District of California's Guidelines for Professional Conduct. Consequently, the district court should have either struck such improper argument or ignored it. Instead, the district court directly considered it *before* considering only a portion of Mr. Miorelli's objection. If an argument is not permissible before a court by its local rules, certainly a ruling relying on that impermissible argument is also improper. Even under

30

an abuse of discretion standard, this Court should recognize that there is no reasonable basis for a district court which ostensibly prohibits *argumentum ad hominem* to discount the filings of one particular litigant on exactly that basis.

Appellees, in response, certainly will step off a parade of horribles related to the so-called "professional objectors" who, they will claim, file frivolous objections and appeals hoping for a payoff. However, no court of appeal has ever held that a district court has authority to ignore or discount objections based on its own impression of potential secret motivations behind an objection. Of course, what is often left out of plaintiffs' attorneys' complaints about so-called objector hold-up is that there can be no payoff without plaintiffs' attorneys' *making payments to objectors*.[4]

Yet even if some objectors engage in rent seeking behavior, that *still* has no bearing on the considerations the district court is required to inquire about before granting final approval of a pre-certification class action settlement. The First Circuit has directly addressed the entire theory of objector hold-up and pointed out that even if a bad-faith objector settles with class counsel, such a deal is irrelevant for other class members: "so long as the class settlement remains unaffected, nothing about the settlement of an extortionate appeal by separately represented, objecting, absent class members logically calls into question whether the class has been faithfully served by its representatives." *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 7 (1st Cir.

---

[4] Mr. Miorelli notes that he has never been paid to withdraw an appeal of a class action settlement approval.

1999). If such a "settlement of an extortionate appeal" has no impact for other class members on whether final approval should have been granted, the mere allegation that an objector might take an extortionate appeal cannot form the basis to discount their arguments.

The Court should reverse the Settlement Agreement and find that the so-called "professional" status of objectors has is irrelevant to the issues before a district court considering whether to grant final approval to a pre-certification class action settlement.

### III. The District Court Abused its Discretion When it Approved an Attorneys' Fee Award Based on a "Questionable" Lodestar Without Reviewing the Billing Records of Class Counsel or Allowing Objectors Access to Such Records.

When the district court selected class counsel in a contested proceeding, it did so largely because the successful firms proposed binding guidelines to limit costs and expenses in the case. ER152. Those guidelines were adopted by the district court as binding in the case. ER151. The district court pointed out that "[c]osts or expenses that do not fall within the limitations outlined in Docket No. 108 will be presumptively unreasonable and not compensable in any fee award." *Id.* The district court further held that even items within the guidelines were not presumptively reasonable. *Id.*

The Guidelines limit staffing at depositions to 1-2 attorneys and 1 paraprofessional; at court hearings only counsel making an appearance and also

involved in the briefing or argument would have compensable time; non-dispositive motion hearings would be limited to two attorneys; conference calls and meetings would be limited; travel expenses would be limited to coach-class airfare, $250 per night hotel rooms, and $120 per diem meal expenses; expenditures for copies exceeding $5,000 required co-lead counsel's explicit authorization; and document review was to be done by a contracted vendor. ER537-41. While Mr. Miorelli applauds the proposal of guidelines, there is nothing in the record to verify whether they were followed, since, for example, per-entry time sheets would need to be known to determine if staffing limits at depositions or court hearings were followed. These would also be necessary to determine how many hours were consumed by conference calls, meetings, and document review, which were each supposed to be limited by the guidelines.

Despite the obvious necessity of detailed billing records to determine if the guidelines were followed, they were never filed in the record of this case. To support their motion for attorneys' fees, costs, and incentive awards, Plaintiff-Appellee attached declarations from the various attorneys and proposed representative class members. The declaration for Plaintiff-Appellee's co-lead counsel Hagens Berman Sobol Shapiro LLP ("Hagens Berman") only addresses the binding guidelines in the context of expenses, not attorney time, and does not provide any of the information necessary to determine whether the attorney time was used within the guidelines because it only provides totals on a per-attorney, per-category basis. ER300, ER305.

33

These summary totals include single entries for as many as 946.8 hours ($497,070.00). ER305. The declaration for Plaintiff-Appellee's co-lead counsel Pearson, Simon & Warshaw, LLP ("PSW") does not even mention the guidelines and similarly does not provide any of the information necessary to determine whether the attorney time was used within the guidelines because it only provides totals on a per-attorney, per-category basis. ER269-77, 280, 282. These summary totals include single entries for as many as 565 hours ($185,786.90). ER280, 282. The declaration for Plaintiff-Appellee's Executive Committee member J. Paul Gignac also does not provide any of the information necessary to determine whether the attorney time was used within the guidelines because it only provides totals on a per-attorney, per-category basis. ER262-64, 267. These summary totals include single entries for as many as 81.3 hours ($56,503.50). ER267. The declaration for Plaintiff-Appellee's Executive Committee member firm Kiesel Law LLP also does not provide any of the information necessary to determine whether the attorney time was used within the guidelines because it only provides totals on a per-attorney, per-category basis. ER251-56, ER258. These summary totals include single entries for as many as 93.7 hours ($30,452.50). ER258. The declaration for Plaintiff-Appellee's Executive Committee member firm Levin, Fishbein, Sedran & Berman also does not provide any of the information necessary to determine whether the attorney time was used within the guidelines because it only provides totals on a per-attorney, per-category basis. ER240-44, ER246-47. These summary totals include single entries for as many as 84.1 hours ($79,895). ER246. The

declaration for Plaintiff-Appellee's Executive Committee member firm Finkelstein Thompson LLP also does not provide any of the information necessary to determine whether the attorney time was used within the guidelines because it only provides totals on a per-attorney *or* per-category basis, making it significantly more vague even than the declarations of the other firms involved in this case. ER233-37, ER239. These summary totals include single entries for as many as 105.5 hours ($63,300). ER236.

Mr. Miorelli recognized these deficiencies and specifically raised them to the district court. ER223-24. In its order granting final approval, a $2.25 million attorneys' fee, and $108,933.72 in "costs and expenses" to Plaintiff-Appellee, the district court noted that the unsubstantiated $4 million lodestar claimed by Plaintiff-Appellee was "questionable." ER22. The district court showed that it had impermissibly delegated the review of the billing records to counsel for Plaintiff-Appellee and, as such, could not "say with confidence that billing judgment was in fact entirely and reasonably exercised." *Id.* Yet despite expressing its "concern as to whether these hours were reasonably necessary" the district court apparently did not inquire beyond the summaries available in the public docket of the case. *Id.* The district court never explained why it was not enforcing its guidelines order.

Instead of enforcing the guidelines order, the district court arbitrarily stated that since the "questionable" lodestar would be more than the attorneys' fee request if it was divided by three, "even the adjusted lodestar cross-check sufficiently establishes

that the fees requested are reasonable." ER23. This is just the sort of "mechanical or formulaic approach that results in an unreasonable award" that abuses the district court's discretion. *In re Mercury Interactive Corp.*, 618 F.3d 988, 944 (9th Cir. 2010). The district court, if it is to conduct a lodestar cross check, has to actually evaluate the lawyers' billings and determine which ones are reasonable, not apply an arbitrary fraction, find it is larger than the request, and declare that the lodestar cross check confirms the award on that basis.

## IV. The District Court Abused its Discretion by Approving a Pre-Certification Class Action Settlement Which Recovered Less Than 0.0045% of Potential Damages and Without Evaluating the Class' Best-Case Outcome at Trial.

Mr. Miorelli objected that the Settlement Agreement was not fair, reasonable, and adequate because the recovery was less than 0.0045% of the potential damages. ER212. The district court did not address the merits of this portion of Mr. Miorelli's objection.

As discussed *supra* at I, the district court did not conduct the requisite evaluation of the *Hanlon* factors before granting final approval. This is not something that can be remedied just by a mere remand and further writing from the district court because there is not sufficient information in the record to evaluate what Plaintiff-Appellee's estimate of their best-case scenario at trial would have been. *Hanlon* requires, *inter alia*, "the district court to balance a number of factors." *Hanlon*, 150 F.3d at 1026. Several of those factors, specifically "the strength of the plaintiffs' case, the

36

risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; [and] the amount offered in settlement" require the district court to balance the settlement against the outcome if the case ultimately is tried to a successful judgment. *Id.* The Northern District of California also requires this in its "Procedural Guidance for Class Action Settlements:"

> Preliminary Approval
>
> 1)   INFORMATION ABOUT THE SETTLEMENT—
> The motion for preliminary approval should address the following information:
>
> […]
>
> d.  The likely recovery per plaintiff under the terms of the settlement and the potential recovery if plaintiffs were to prevail on each of their claims.
>
> e.  The fairness of the allocation of the settlement fund among class members.

The district court asked Plaintiff-Appellee to give further briefing on this point before it granted preliminary approval. ER50-51. While Plaintiff-Appellee provided further briefing, it did not actually answer the relevant question from *Hanlon* and the Northern District of California's rule. Specifically, Plaintiff-Appellee evaluated the potential value of the Federal Wiretap Act claims, but did not evaluate (a) the value of the state privacy and wiretap acts, (b) the value of the Magnuson-Moss Warranty Act and state warranty claims, or, (c) the value of the state consumer fraud claims. ER384-

86. While Plaintiff-Appellee provided paragraphs whose headings suggested analysis of the value of those three categories of non-evaluated claims, those sections do not actually ever come to a *conclusion* about a maximum, minimum, or in any other way estimated value. ER385-86.

This was a missed opportunity for the district court to deny preliminary approval, but it was not missed silently for long. Mr. Miorelli raised serious questions relating to how it could possibly be that a case which clearly had the potential to exceed the total market capitalization of the defendants could be settled for only $9 million. ER212-13. On this basis, Mr. Miorelli argued that the district court was approving a settlement agreement worth 0.0045% of the maximum value of the claims. ER213. Mr. Miorelli contends that even if there was additional briefing, it is hard to imagine that rational economic actors are settling a case which is anything more than a nuisance case with *almost-zero* merit for 0.0045% of its value. Basic economic theory teaches that rational actors settling litigation matters agree to an amount of money approximating their estimation of the amount of their damages discounted by their probability of success at trial. If Mr. Miorelli's estimate is anywhere close to accurate (and there is nothing in the record, despite the district

court's order, to refute it), then the amount, on its own, demonstrates that this is a frivolous case which should not have survived the motion to dismiss.[5]

The Seventh Circuit addressed a situation like this in *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (Easterbrook, J.). In Murray, the defendant and class representative proposed to settle the case for single-digit percentage of the value of their damages in payments that were in the range of $1 per absent class member, while the lawyers received enormous fees and the representative plaintiff received thousands of times more money than the absent class members. *Id.* Judge Easterbrook said "[s]uch a settlement is untenable. We don't mean by this that all class members must receive [full compensation]; risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty." *Id.* at 952. However,

> if the chance of success really is only 1%, shouldn't the suit be dismissed as frivolous and no one receive a penny? If, however, the chance of success is materially greater than 1%, as the proposed payment [of an incentive award to representative plaintiff] Murray implies, then the failure to afford effectual relief to any other class member makes the deal look like a sellout.

---

[5] It bears emphasis that, even if Mr. Miorelli's estimate is off by a factor of 1,000X, the settlement *still* would be for only 4.5% of the class' potential recovery at trial. Reasonable people can disagree on litigation estimates, but it strains credulity to believe that a fair estimate of the *maximum* value of the claims, as presented in the operative complaint, are worth more than 1,000X less than Mr. Miorelli estimated. Certainly there is no evidence in the record suggesting a potential range of best-case estimates with over 1,000X differences.

*Id.*

The lack of analysis is, as described *supra* at I, sufficient grounds for this Court to reverse. The failure to follow the Northern District of California's requirements regarding a full valuation of the claims in a best-case outcome at trial is an independent basis for this Court to reverse. Finally, this Court should direct the district court to carefully scrutinize whether a settlement for less than 1% of a potential recovery at trial does not create a *presumption* that the parties have *de facto* admitted that the case is either worthless or almost-worthless. That scrutiny should result in a renewed consideration of whether the claims can survive a motion to dismiss. This Court should instruct that less-than-1% settlements should be subject to particularly-heightened scrutiny much like the Seventh Circuit's rule.

A. Beyond the procedural deficiencies, the Settlement Agreement itself is manifestly unfit for final approval.

While Plaintiff-Appellee did not provide an estimate of the economic value of the case if it was successful at trial, the Court should be able to easily see that this was not a case being settled from a place of fundamental weakness. While Carrier IQ and Pantech were in financial difficulties, the other defendants collectively are strong companies with almost $200 billion in market capitalization. ER231. Additionally, this was not a case litigated completely independently by Plaintiff-Appellee: there was a concurrent FTC investigation of HTC and Carrier IQ software with an FTC Consent Order that fully explained the factual basis of how the security flaw occurred and

finding that HTC engaged in unfair or deceptive acts or practices in violation of the Federal Trade Commission Act. ER60-61.

The procedural posture at settlement with the manufacturer defendants is important: the district court had partially granted Defendant-Appellees' motion to dismiss, but with regard to all-but-one of those claims allowed Plaintiff-Appellee leave to either amend or introduce additional proposed class representatives to cure the deficiencies. ER148-50. While certainly it is not ideal to lose a motion to dismiss, adding class representatives from additional states (which would have cured most of the problems) is not an insurmountable or complex legal challenge. Even if the high-value Federal Wiretap Act claims were not ultimately successful, the state claims could have justified at least damages equal to the purchase price of each class member's phone, which at even $100 per phone would make the case worth $3 billion, not $9 million.[6] This is not to say the case did not face potential challenges in future litigation, but there is no evidence in the record to support an inference that the case faced a less-than-1% chance of success justifying a 0.0045% settlement or that there was not sufficient resources available from Defendants-Appellees to pay a larger judgment. These details are more than sufficient for this Court to find that the

---

[6] Mr. Miorelli recognizes that this amount is just an estimate for illustrative purposes, but since Plaintiff-Appellee consistently refused to provide their own estimate of the value of the case to the district court below, there is no choice but to make independent estimates. This further supports remand at the very least, but the ease of showing the absurdity of the Settlement Agreement should leave the Court with confidence that *this* Settlement Agreement cannot be saved.

Settlement Agreement, even if the procedural errors were cured on remand, could never in its current form be characterized as fair, reasonable, and adequate.

## V.    The District Court Abused its Discretion by Approving a Settlement Which Paid Named Plaintiffs More Than 36x More Than Absent Class Members.

Mr. Miorelli objected to the award of $5,000 incentive awards to each of the class representatives as excessive and evidencing that the class representatives were not adequately representing the class because they agreed to an unfair settlement because of their own pecuniary interests. ER219-22. The district court agreed with Mr. Miorelli and reduced five of the incentive awards to $3,000 each, but left the remaining twelve intact at $5,000 each. ER23.

The current estimate is that each absent class member will receive approximately $138.34. ER160. This means the twelve class representatives receiving $5,000 will receive 36.14 times more money than the absent class members. This is unfair, unreasonable, and reduces the amount of money available to absent class members by about $70,000, or about $1.71 per claim (1.23%)[7]. While Plaintiff-Appellee will certainly contend here as they did below that the payments are not contingent on support for the Settlement Agreement, this is sophistry. Class representatives are only paid their incentive awards, whatever they may be, if the Settlement Agreement reaches the Effective Date. ER325. This provides the same

---

[7] Compare this 1.23% *improvement* to the 0.0045% recovery.

$5,000 incentive for their compliance as if it was explicitly required as a term of the agreement.

This Circuit has stood firmly against large-disparity contingent-on-settlement-approval incentive awards. In *Radcliffe*, 715 F.3d at 1165, this Circuit reversed an approved settlement due to a 6.67-192.3 times disparity between class representatives' recovery and that of absent class members. This Circuit reasoned that "the significant disparity between the incentive awards and the payments to the rest of the class members further exacerbated the conflict of interest caused by the conditional incentive awards." *Id.* "There is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 in incentive awards." *Id.* With a 36x disparity from a $138 settlement check to a $5,000 incentive award, this Settlement Agreement is squarely within the same range of payments and of unfairness as was rejected in *Radcliffe*.

The other circuits agree that such large disparities are unacceptable. The Sixth Circuit rejected a large disparity between the named plaintiffs and absent class members' treatment in *Vassalle v. Midland Funding, LLC*, 708 F.3d 747 (6th Cir. 2013). In *Vassalle*, the settlement provided for absent class members to receive $17.38 each while the named plaintiffs would be paid $2,000 each plus, in the case of one named plaintiff, have $4,516.57 in debt forgiven. *Id.* at 755-56. In total, this resulted in named plaintiffs receiving approximately 374 times as much benefit from the settlement as

43

absent class members. The Sixth Circuit found the settlement was unfair and that the district court abused its discretion by approving it. *Id.* at 756.

The Second Circuit also is skeptical of the fairness of incentive payments. In *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982), the Second Circuit affirmed the denial of a proposed class action settlement where absent class members received $1,000 each while the four representative class members received between $8,500 and $17,500 each. The affirmed decision of the district court held that "where representative plaintiffs obtain more for themselves by settlement than they do for the class for whom they are obligated to act as fiduciaries, serious questions are raised as to the fairness of the settlement to the class." *Plummer v. Chemical Bank*, 91 F.R.D. 434, 441-42 (S.D.N.Y. 1981), *aff'd*, 668 F.2d 654 (2d Cir. 1982).

The Eleventh Circuit directly cited that same district court language in *Plummer* when it rejected a class settlement which allocated approximately 6.25% of a lump sum settlement to the eight representative class members, while the absent class members each received, on average, approximately 0.42% of the settlement. *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1146, 1148 (11th Cir. 1983). The court found the 14.75 times disparity between representative and absent class member recovery was facially unfair and reversed the district court's approval of the settlement. *Id.* at 1151.

While Plaintiff-Appellee is likely to claim *In re Online DVD-Rental* authorizes these incentive awards, it does not. *In re Online DVD-Rental* specifically distinguished the $5,000 incentive awards it declined to reverse from incentive awards that are only

44

paid if the underlying settlement agreement is approved, as was found in *Radcliffe* and here. *In re Online DVD-Rental*, 779 F.3d at 943. This structure leaves the Settlement Agreement fatally flawed as the class representatives can no longer be relied upon to protect the absent class members. The Court must reverse and, to the extent it does not direct the district court to reject the settlement agreement, it should order discovery of the class representatives regarding their policing of Class Counsel during the settlement process and the litigation overall.

## VI.    The District Court Violated This Court's Precedent by Awarding Attorneys' Fees Based on the Gross Settlement Instead of the Net Settlement Without Explaining Why a Gross-Based Calculation was More Reasonable.

In addition to improperly calculating the lodestar, the district court cited *In re Online DVD-Rental* in support of awarding attorneys' fees as a percentage of the gross settlement fund instead of net settlement fund without evaluating whether the gross or net outcome was more reasonable. Indeed, the entire analysis of the reasonableness of awarding 25% of gross instead of 25% of net consisted of: "[h]ere, the end result is reasonable." ER22. There was no analysis of whether the settlement administrator expenses were a benefit to the class or a benefit to defendants. The Court simply declared the total amount of settlement administration expenses was reasonable despite being "high" because there were 30 million class members. But this does not address, for instance, Mr. Miorelli's contention that these notice expenses are a benefit to Defendant-Appellee since notice is the basis on which the release is effective on a

class-wide basis. *Hecht v. United Collection Bureau*, 691 F.3d 218, 224 (2d Cir. 2012). In fact, the Defendant-Appellant has an incentive to spend additional amounts on notice as less expensive means of notice, such as constructive notice by a single publication, may be sufficient to satisfy due process only "as to persons whose whereabouts or interests cannot be determined through due diligence." *Id.* (quoting *In re Agent Orange*, 818 F.2d 145, 168 (2d Cir. 1987)). *See also, Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014), *Bluetooth*, 654 F.3d at 944, and *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1228-9 (11th Cir. 1998).

Since the district court did not actually analyze Mr. Miorelli's objection or any other reason why it may have concluded that a gross settlement is more appropriate than a net settlement, this Court must reverse, at least, for the district court to explain why it picked gross as a more fair calculation than net. The Court should explain to the district court that *In re Online DVD-Rental* does not *mandate* a gross-based fee, it only authorizes such when the district court finds that a gross-based calculation is appropriate. In this case, where the district court has already found that the settlement administration expenses are "high," the conditions are ripe for a finding that those high expenses should not result in a commission[8] to Class Counsel and a net-based fee is more appropriate.

---

[8] If settlement administration expenses are part of the denominator in a percentage fee award calculation, then for each additional dollar spent on administration instead

## CONCLUSION

The analysis required by Rule 23, *Dukes*, and *Hanlon* are not formalities, they are absent class members' only protections against self-serving, lawyer-driven settlements. There are meaningful legal standards to be applied and analyzed not only so that this Court can review the decision, but also so that absent class members can read and understand why the resolution of their legal issues was fair, reasonable, and adequate.

The district court's order provided woefully insufficient reasoning to the point that there is no basis for this Court to even review it. As a matter of law, for that reason alone, it must at a minimum be vacated, reversed, and remanded. However, even on remand, *this* Settlement Agreement will never pass muster, so for the reasons stated above, Objector-Appellant Miorelli respectfully requests that the Court (a) vacate the judgment, (b) reverse and remand to the district court with instructions to reject the Settlement Agreement as unfair, inadequate, and unreasonable; and (c) order that the case be reassigned on remand. In the alternative, to the extent the Court does not instruct the district court to reject the Settlement Agreement, Mr. Miorelli respectfully requests that the Court instruct the district court to order a reasonable discovery period for Mr. Miorelli to inquire into the extent to which *each* of the 17 class representatives was involved with the settlement negotiations and the extent to which they policed Class Counsel's behavior during the litigation.

---

of paid to class members, the attorneys still receive 25¢. Financially this is no different than if Class Counsel was paid a commission outright.

## STATEMENT OF RELATED CASES

One other objector, Patrick S. Sweeney ("Mr. Sweeney"), appealed *pro se* from the same judgment of the district court that Mr. Miorelli appeals herein. That case was docketed before this Court at Case No. 16-16817 but Mr. Sweeney did not file a brief and as such the appeal was dismissed for failure to prosecute by the Clerk pursuant to this Court's Rule 42-1 on February 8, 2017.

Defendants-Appellees in this case appealed the district court's March 28, 2014 denial of their motion to compel arbitration. That appeal is still pending before the Court at case numbers 14-15843 and 14-15846. Defendants-Appellees filed their opening brief in that appeal on January 16, 2015 (Case No. 14-15843 at Dkt 16) No answering brief has been filed, instead the case has apparently been in the Court's mediation program even to this day with a mediation status report currently due June 5, 2017. (Case No. 14-15843 at Dkt 36).

DATED: February 16, 2017

/s/ Sam A. Miorelli, E.I., Esq.
Sam A. Miorelli, E.I., Esq.
Law Office of Sam Miorelli, P.A.
764 Ellwood Avenue
Orlando, FL 32804
Telephone: (352) 458-4092
E-Mail: sam.miorelli@gmail.com

48

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2017, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which will provide service to all parties in this case who are all active CM/ECF registered filers.

DATED: February 17, 2017

/s/ Sam A. Miorelli, E.I., Esq.
Sam A. Miorelli, E.I., Esq.
Law Office of Sam Miorelli, P.A.
764 Ellwood Avenue
Orlando, FL 32804
Telephone: (352) 458-4092
E-Mail: sam.miorelli@gmail.com

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28-1.1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** 16-16816

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28-1.1.
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is [12.468] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [_____]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant | /s/ Sam Miorelli | Date | Feb 16, 2017

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev.12/1/16)*